KINGMAN-MOORE IMPLEMENT COMPANY, Respondent, v. ERNEST S. ELLIS, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1. **SALES: Fraud: Rescission: Status Quo.** A sale procured by fraud is not void but the injured party may so elect to treat it by acting decisively and promptly on becoming aware of the the fraud and returning to the defrauding party what has been received of him so as to put him *in statu quo*.

2. ———: ———: ———: ———: **Exception.** But where the defrauding party owes the defrauded party as much or more than the sum which is claimed should be returned, there need be no return of the property involved.

3. ———: ———: ———: ———: ———. A vendee fraudulently bought goods. He sold some of them in the course of business and made a payment less than the amount sold. Subsequently the vendor discovered the fraud and brought his action in replevin to recover the remainder of the sold goods. *Held*, he was not required to return the payment made by the vendee, since the vendee had sold and parted with goods of greater value than the payment.

4. ———: ———: ———: ———: **Note.** Where the vendee gives his note for goods fraudulently purchased and subsequently the vendor becomes aware of the fraud, he must offer to return the note before he brings his action in replevin to recover the remaining goods found in the vendee's hands, since no cause of action arises at law until the rescission of the contract. [Actions in equity distinguished. Cases considered and distinguished.]

5. ———: ———: ———: ———: ———: **Insolvency.** Where the articles involved is worthless there need be no return before action is brought, but this rule can have no application to a note upon an insolvent party.

6. ———: ———: ———: ———: ———: ———. The claim that the note is a mere express promise to pay which is avoided by the rescission of the contract and therefore is nothing and need not be returned is disapproved, since the party claiming a rescission has no right to put the opposing party to an action to recover what he has parted with.

Appeal from Jackson Circuit Court.—*Hon. Jackson L. Smith,* Special Judge.

REVERSED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) Defendant's motion to dismiss and for judgment should have been sustained. Whitsett v. Blumenthal, 63 Mo. 479; Timmons v. Chouteau, 13 Mo. 223; Shreve v. Cheesman, 69 Fed. 785; Implement Co. v. Harvester Co., 133 Fed. 376; Bank v. Fritzlen, 135 Fed. 650. (2) Instruction number 2 given for plaintiff contains an erroneous statement of the law and is in direct conflict with instruction number 1 given for defendant. Instruction number 3 given for plaintiff is also erroneous. Hughes, Instructions to Juries, sec. 247; McQuillin, Instructions to Juries in Missouri Civil Cases, sec. 291, and the Missouri cases cited; Redpath v. Lawrence, 42 Mo. App. 101. (3) Instruction B requested by defendant correctly states the law and should have been given. Harding, Whitman & Co. v. York Knitting Mills, 142 Fed. 228; 24 Am. and Eng. Ency. of Law, p. 1105; Plow Works v. Ross, 74 Mo. App. 437; Beal v. Minneapolis, etc., Co., 84 Mo. App. 539; Culbertson v. Young, 86 Mo. App. 277; Carson v. Smith, 133 Mo. 606. (4) Plaintiff's evidence proved conclusively that the suit was prematurely brought and that plaintiff was not entitled to recover. Richardson v. Lowe, 149 Fed. 625; Cahn v. Reid, 18 Mo. App. 115; Shoe Co. v. Bank, 56 Mo. App. 662; Chemical Co. v. Nickells, 66 Mo. App. 678; Ross v. Gates, 117 Mo. App. 237.

*Ashley, Gilbert & Dunn* for respondent.

(1) Respondent's second and third instructions were correct, and any conflicting instruction given at appellant's instance was error in his favor of which he cannot avail himself. Summers v. Insurance Co., 90 Mo. App. 691; Weston v. Mining Co., 105 Mo. App. 710; Fehlhauer v. St. Louis, 178 Mo. 653. If the false representation is one cause of the sale, it is fraudulent,

though there may have been reliance placed on other matters. Kirkendall v. Hartsock, 58 Mo. App. 234; Saunders v. McClintock, 46 Mo. App. 224; Cahn v. Reid & Bunghardt, 18 Mo. App. 131; Hersey v. Benedict, 15 Hun 282. (2) The record below shows no point expressly raised as to the notes, but in any event the production and tender of the notes at the trial was alone necessary, especially as they were the buyers' own unsecured and unnegotiated notes. Steamboat v. Lumm, 9 Mo. 66; Doebling v. Loos, 45 Mo. 152; Bertiaux v. Dillon, 20 Mo. App. 603; O'Bryan v. Jones, 38 Mo. App. 94; Commission Co. v. Railroad, 72 Mo. App. 445; Thurston v. Blanchard, 22 Pick. 18; Girard v. Carwheel Co., 123 Mo. 387; Berkshire v. Hoover, 92 Mo. App. 352; Bailey v. Bank, 99 Mo. App. 571, 575; Duval v. Mowry, 6 R. I. 479; Frost v. Lowry, 15 Ohio 200; Dayton v. Monroe, 47 Mich. 193; Wood v. Garland, 58 N. H. 154; Coghill v. Boring, 15 Cal. 213; Ladd v. Moore, 3 Sanf. 589; Armstrong v. Tufts, 6 Barb. 432; Pearse v. Pettis, 47 Barb. 285; Nichols v. Michaels, 23 N. Y. 273; Ryan v. Brant, 42 Ill. 78. (3) In a suit based on a rescission on account of fraud, the vendor need not tender a part payment made by the purchaser, when the latter has disposed of a part of the goods of greater value than the amount paid. Hunt on Tender, sec. 33; Kley v. Healey, 127 N. Y. 555; Allerton v. Allerton, 50 N. Y. 670; Pearse v. Pettis, 47 Barb. 285; Symns v. Benner, 31 Neb. 597; Tootle v. Bank, 34 Neb. 863; Ladd v. Moore, 3 Sanf. 589; Farwell Co. v. Hilton, 84 Fed. 293; Iron Co. v. McEbony, 47 Neb. 228; Sisson v. Hill, 18 R. I. 212; Lewisjohn v. Apple, 12 Civ. Proc. R. (N. Y. 1887,) 274; Roby v. Frank, Herman & Co., 12 Tex. Civ. App. 125, 128.

ELLISON, J.—This action is for one thousand seven hundred and twenty-five dollars claimed of de-

fendant by the plaintiff.   The latter prevailed in the trial court.

Plaintiff sold a lot of vehicles and farm implements to the Blackwell Hardware Company on credit, the credit having been obtained by false and fraudulent representations made by the hardware company with the fraudulent purpose of obtaining the credit.   There was a payment of fifty-two dollars afterwards made on the purchase.   Plaintiff took notes of the hardware company, maturing at different times.   The hardware company sold goods which it had thus purchased of plaintiff, in an amount greater than the fifty-two dollars paid on the account.   The hardware company was insolvent and made an assignment to defendant as trustee for all the creditors including the plaintiff. After the assignment to the defendant plaintiff found in his possession a large lot of the property which it had sold to the hardware company and threatened defendant with a suit in replevin for them.   The value of the property was agreed upon as one thousand seven hundred and twenty-five dollars.   No tender or offer to return the fifty-two dollars in money or the notes was made.   The foregoing statement does not contain some of the detail entered upon by each of the parties, but it is thought that it fully presents facts necessary to a determination of the case.

Though this is an action for money, yet on account of the agreement of the parties it is treated as though it were replevin for the goods sold by plaintiff to the hardware company which plaintiff found in defendant's possession yet undisposed of.   The question presented is, whether plaintiff can maintain the action without a return or offer to return the money and the notes.   We will consider these separately.   There is no doubt that when one obtains the property of another through a contract induced by fraud that such contract is voidable at the election of the defrauded party.   It

is an inaccuracy to designate the contract as void, for, if the injured party so chooses, he may stand by it. It is void at his election after knowledge of the fraud. If he elects to rescind the contract he must act decisively and promptly upon becoming aware of the imposition. Such action consists in return to the other party what has been received of him and thus put him *in statu quo*. Such is the rule recognized by the great weight of authority and in no jurisdiction more uniformly than in this State. We went over the question in Cahn v. Ried, 18 Mo. App. 122, 126. And we have so decided in a number of other cases, and so has the St. Louis Court of Appeals. [Wertheimer v. Bank, 56 Mo. App. 662.] The Supreme Court both before and since then has stated the same rule. [Jarrett v. Morton, 44 Mo. 275; Estes v. Reynolds, 75 Mo. 563; Robinson v. Siple, 129 Mo. 208; Och v. Railroad, 130 Mo. 27; Taylor v. Short, 107 Mo. 384; Althoff v. Transit Co., 102 S. W. 642; Phares v. Lumber Co., 118 Mo. App. 546.]

But there is an exception to the rule, which is, that where the party committing the fraud owes the defrauded party as much or more than the sum which is claimed should have been returned it need not, in such cases, be returned. [Alexander v. Railroad, 54 Mo. App. 66; Girard v. Wheel Co., 46 Mo. App. 116, opinion of Judge BIGGS; s. c. 123 Mo. 383; Winter v. Railroad, 73 Mo. App. 173, 202; 160 Mo. 159; Kley v. Healy, 127 N. Y. 555.]

This exception should be applied where the purchase money which has been paid is not more than the value of the defrauded party's goods which have been disposed of and thus placed out of his reach; for the same reason, founded upon the same ideas of full justice to the defrauded party, appears in such case as in the other. [Sloane v. Shiffer, 156 Pa. St. 59; Schofield v. Schiffer, 156 Pa. St. 65; Tootle v. Bank, 34 Nebr. 863; Phoenix Co. v. McEvony, 47 Nebr. 228; Farwell v. Hil-

ton, 84 Fed. 293.] It is altogether out of question, in such instances, for the party committing the fraud to demand a *status quo,* when he, himself, has disposed of property of more value than the amount of money he claims should have been returned to him. If the money he has paid should be returned to him, he would profit by his fraud in himself retaining what he got for the goods, and also having placed back in his hands what he paid for them. We therefore hold that it was not necessary in this case for plaintiff to have first returned the money received before bringing this action.

Should a note of a party committing the fraud which he gives for the property purchased be returned or offered back before bringing the action? The plaintiff says no. But we think it should. We do not know of any reason why there should be a distinction in this respect between a note and other property. The party who is defrauded has his choice of line of action. He may affirm the contract by retaining the property he receives and sue for damages; or he may affirm the contract by retaining the property and then resisting action for the purchase price *pro tanto;* or he may repudiate the contract by turning back, or offering to turn back, what he has received under it and then bringing his action for what he has parted with. If he retains what he has received he necessarily affirms the contract, for it was only by reason of the contract he obtained it. Questions of rescission where a note was involved, have been before the Supreme Court and this court, and no distinction made, the rule being announced that the note should be returned before suit brought. [Jarrett v. Morton, 44 Mo. 275.] It was announced as to county, or township bonds. [Estes v. Reynolds, 75 Mo. 563.] And in the recent case of Roeder v. Robertson, 202 Mo. 522, 100 S. W. 1086, where the payment made consisted of an article of property, money and promissory notes of the vendee, Judge WOODSON made

no distinction against a return of the notes and stated that an action could not be maintained without "first returning or offering to return the payments," citing Merrill Chemical Co. v. Nickells, infra. The rule was announced in this court in an opinion by Judge SMITH in which it was stated that the fact that the notes were upon insolvent parties did not alter the rule. For as stated by him "The insolvent of to-day may be the man of fortune tomorrow." [Chemical Co. v. Nickells, 66 Mo. App. 678.]

It is true that in some jurisdictions it has been held that the vendee's note need not be returned or offered before bringing the action, provided the plaintiff will tender it at the trial. Those cases are principally founded on an early case in Massachusetts (Thurston v. Blanchard, 22 Pick. 18) which was an action of trover. We are satisfied that much apparent conflict in the ruling in other States has arisen from failure to notice the nature of the action to which the language of the courts is addressed. In equity suits for a rescission, the action is not founded on a rescission but the object is to obtain a rescission and there need be no offer to return before bringing the action. In trover, while the action is founded upon the idea of a repudiation of the contract whereby the defendant obtained the property, yet it must be remembered that it is an action for damages and there would frequently be instances in which the plaintiff would be allowed to retain what he had received from the defendant as a part of the damages sustained. If he could show that he had been damaged, in addition to the value of the property converted, more than the payments received, he perhaps should not be required to tender back such payments. For if he recovered the value of the property and also retained payments made he would not be getting more than the amount of his injury which injury

included consequential damages over and above the value of the property converted.

Care should also be taken to note the difference in the view taken as to the nature of the right the fraudulent vendee obtains. In some jurisdictions, it is said he obtains no title, and therefore it might, with some reason, be said that he may be sued for the property without previous offer to return whatever he may have received. But in this State (and by the weight of authority elsewhere) the law is that the title does pass to the vendee, the contract is *not void, but only voidable by rescission.* The vendor may stand by the contract if he so elects, and silence, after knowledge, is an election. In order to avoid the contract he must take some affirmative action of rescission. Again in a few jurisdictions practically much of the doctrine as to rescission which has ever been recognized in this State is not regarded with favor. [See Sisson v. Hill, 18 R. I. 212.]

However, with all that has been said on the subject, there is scarcely a case to be found (I can now think of none) which, while holding there need be no offer to return before bringing the action, but what asserts the necessity of making the offer at the trial. We cannot see a reason for such distinction. As already stated, if the action is one in equity for a rescission — wherein it is sought to have a rescission adjudged — it is doubtless permissible to plead a willingness and to tender into court. But if the action is at law and is based upon a rescission *already made,* necessarily there must have been a return, or offer to return, the note; for until that action is taken there is no rescission and hence no foundation upon which to base the action. A plaintiff cannot begin an action until a right to maintain it has accrued to him. Before the enactment of a statute, his right to maintain many actions depended upon a prior demand and if begun without such demand he failed.

He cannot maintain an action on a claim not due when he began it, although it might be due before trial. His right must exist when he asserts it, else he will be compelled to go out of court and begin over. A right of action which can only arise by reason of a rescission manifestly cannot be asserted until a rescission is had; and a rescission can only be had by returning that which has been received by reason of the repudiated contract. Judge BURGESS in speaking for the Supreme Court said that "Until repudiation of the contract of settlement plaintiff had no cause of action. Under such conditions 'something must be done by the party defrauded before the contract can cease to be binding.'" [Och v. Railroad, 130 Mo. 27, 47.] Why it should be thought necessary to tender the note before trial and yet not before beginning the action, is hard to understand. Conceding the necessity for returning it at the trial is an admission that it is a matter of substance as affecting the defendant and as affecting the duty of the plaintiff. If it is necessary to be restored to the person, who has parted with it, that necessity exists (in an action at law) before the action is begun.

It is true that if a thing is worthless it need not be returned before suit, but neither need it be returned at the trial. But, as above stated, it will not do to say that the note of an insolvent is worthless in the sense that that expression is used in cases. It would be an unsatisfactory answer to a defendant, although insolvent, to tell him his note was worthless and refuse to return it. If it is a genuine note, how is it to be proven to be worthless? Proof that the maker has no property above exemptions will not suffice, for any number of such men have high credit and their obligations are regarded as of par value.

But the reason stated why it is not necessary to return the vendee's note before bringing the action is that it is said that a note is a mere express promise to

pay which is avoided by a rescission of the contract and therefore it is nothing. This statement though made by a court of great learning is not satisfactory. That court says the note is avoided by the rescission. A ready answer to that is that there cannot be a rescission without a return of that which the contract put in the complaining party's hands. That mode of disposing of the question transposes the effect of the act to the place of the cause of the act. A rescission of a contract is an effect produced by a return of things received under it when it can be done. One should not be allowed to say that, "I will repudiate the contract and sue you without first returning the note you gave me by reason of the contract, because if I should sue you on the note you can defend by showing that I repudiated the contract upon which it was founded;" any more than he should be allowed to avoid by replevin an exchange of horses without first returning the horse he received. In the latter case he could just as reasonably say that he need not return the horse since the other party could in turn replevin him and recover by showing his repudiation. The party claiming a rescission has no right to put the opposite party to an action to recover what he has parted with. [Gould v. Bank, 86 N. Y. 79, 80.] If the mere bringing an action without a return of things received, is a rescission, there is no way that a vendee could know that the vendor was not satisfied with the contract, or that at least he would not abide by it and seek some other remedy. There is no opportunity given for an avoidance of litigation by each giving back all received and thus establishing the *status quo* without resort to the courts.

An examination of the cases elsewhere has satisfied us that the weight of authority, as well as good reason, sustains the view which we have above stated has been taken by the Supreme Court and the Courts of Appeals in this State, that actions *at law*, of this na-

ture, are based upon the rescission which must be had before bringing the action; and that the vendee's promissory note must be returned to him. It was so held in Thompson v. Peck, 115 Ind. 512. The court said in that case that, "Replevin is strictly an action at law. The right of recovery must exist at the time the action is commenced. It cannot be created by bringing the notes into court, as in an equitable suit for rescission, and offering to surrender them up as the court may direct." In Moriarity v. Stofferan, 89 Ill. 528, the court said that "Assuming the plaintiff's version of the facts to be true, he was not entitled to the possession of the property at the time that he commenced his action. If his allegations be true, he undoubtedly had a right to rescind the contract by offering to return the note. He however, was not in condition to bring his action until he had offered to return the note." And so the same was decided in Doane v. Lockwood, 115 Ill. 490, and Farwell v. Hanchett, 120 Ill. 577, 578, and Schwartz v. McCloskey, 156 Pa. St. 262, .263; as well as in Oscamp v. Crites, 37 Neb. 837, 842. It will be noticed in the Doane and Farwell cases that there is a statute in Illinois which provides that if after suit in replevin is brought the plaintiff becomes entitled to the property that it shall be adjudged to him though he was not entitled to it when he instituted the action. And in those cases, the rescission having been accomplished by returning the notes after bringing the suits, the plaintiff was permitted to keep the property, though being liable for the costs and whatever damages may have resulted to the defendants by the premature bringing of the suits. That however does not affect the cases as authority on the matter under discussion.

Plaintiff has stated that the notes are less in amount than the value of the goods disposed of by the defendant and suggests that as an additional reason why an offer to return before bringing suit was not necessary. The

record does not bear out the statement. After allowing for payments made, the notes amount to more than the value of the goods disposed of by defendant.

It follows that defendant's instruction in the nature of a demurrer to the evidence should have been sustained. The judgment is therefore reversed. All concur.